UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TOWER CREDIT, INC.,

               CIVIL ACTION

    Appellant,

               No. 3:15-00578-JWD-RLB

VERSUS

MARTIN A. SCHOTT,

    Appellee.

## RULING ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF LOUISIANA JUDGE DOUGLASS D. DODD

**I. INTRODUCTION**

Before the Court is the Appeal from the United States Bankruptcy Court for the Middle District of Louisiana Judge Douglas D. Dodd ("Appeal"), as supported by the Appellant's Brief ("Brief"), tendered by Tower Credit, Inc. ("Appellant" or "Tower"). Countering this motion is the brief ("Opposition") filed by Mr. Martin A. Schott ("Appellee" or "Trustee"), the trustee appointed to administer the estate automatically engendered by the filing of a voluntary petition for bankruptcy relief ("Petition") pursuant to Chapter 7 of the United States Code's eleventh

USBC - Certified

title[1] ("Bankruptcy Code" or "Code") by Mr. Christon Jackson ("Jackson" or "Debtor"). In the Opposition and the Appeal (collectively, "Filings"), Appellant and Appellee (collectively, "Parties") raise a single legal issue: whether the United States Bankruptcy Court for the Middle District of Louisiana ("Bankruptcy Court") erred when it concluded that garnishments of the wages earned by the Debtor from August 19, 2012, through November 17, 2012, all of which were paid to Tower in accordance with an order of garnishment ("Order") entered by a local court, were made within ninety days of November 17, 2012, the date on which the Debtor filed the Petition's filing ("Petition Date"), as required for these transferred sums to be recovered (or, in bankruptcy law's argot, "avoided") by the Trustee as preferential transfers pursuant to § 547(b).

Focusing on the same subparagraph, the Parties sharply disagree over this language's rightful construction. In the Appellant's view, its entitlement to those wages was purportedly perfected when the Order was entered on March 30, 2009. Arithmetically, the gap between this date and the Petition Date exceeds ninety days, and no reasonable construction of § 547, as at least three cases conclude, supports the Trustee's recovery of this transferred property on the estate's behalf. Therefore, the Appellant argues that the Bankruptcy Court's legal error is manifest. In other words, pursuant to § 547(b), the garnishments paid within ninety days of the Petition Date should have remained Tower's own.

To the Trustee, on the other hand, this argument ignores the overwhelming weight of well-settled precedent. Citing several representative opinions, the Trustee argues that a sizable body of case law holds that no debtor possesses a property interest in his future wages for

---

[1] The specific provisions of the Bankruptcy Code, set forth in 11 U.S.C. §§ 101–1532 inclusive, are referred to in this ruling as "section _" or "§ _" unless otherwise noted.

purposes of § 547(b) based on § 547(e)(3) and the Code's well-known and obvious purposes. Since these wages were earned and the garnishments were paid ninety days within the Petition Date, the latter constitute preferential transfers voidable under § 547. In accordance with the constitutionally supreme law that is the Code, moreover, the Order's perfection date cannot be relevant. The Bankruptcy Court agreed with the Trustee, and this appeal followed ("Present Action").

Based on § 547's language, construed in light of the principles of interpretation applicable to this "expansive (and sometimes unruly) area of law," *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2073, 182 L. Ed. 2d 967 (2012), this Court, like the Bankruptcy Court, finds no merit in Appellant's position. For the Code's purposes, the Debtor's interest in the relevant property first materialized between August 19, 2012, and November 17, 2012, and the Order's technical date is immaterial to this temporal determination. Of course, as Appellant rightly asserts, the distinctive laws of the fifty states often create the property interests central to the Code's operation. Nonetheless, the Code and it alone is fully preeminent and entirely preemptive where its terms, analyzed "clearly and predictably using well established principles of statutory construction," are crystal clear. *Id.* While the Appellant's handful of cases deduce differently, their flawed reasoning cannot overcome § 547's plain and unambiguous import. Accordingly, for these reasons, as more fully explained below,[2] this Court AFFIRMS the Bankruptcy Court.

---

[2] For this reason, no oral argument is necessary.

## II.     BACKGROUND

### A.     Factual and Procedural History

On March 30, 2009, Tower, a Louisiana corporation formed on March 16, 1990 and based in Baton Rouge, obtained a money judgment in the Baton Rouge City Court against Jackson. (Doc. 3 at 5; Doc. 10 at 5.) Attempting to collect, Tower sought and obtained the Order, which was served on Jackson's employer on January 19, 2012, and garnished the Debtor's wages until his debt was satisfied. (*See, e.g.*, Doc. 3 at 5; Doc. 10 at 5.) More than nine months later, on a Saturday, Jackson filed the Petition. (Doc. 1, No. 3:12-bk-11686; *see also* Doc. 10 at 5.) According to the Debtor's Schedule F, he still owed Tower approximately $4,775 on or about November 17, 2012. (Doc. 4 at 13, No. 3:12-bk-11686;[3] *cf.* Doc. 1 at 2, No. 3:14-ap-01084.) Based on the Debtor's first Summary of Schedules, his assets totaled $3,125, and his average monthly income was no more than $2,853, his expenses of $2,695 leaving him with a net income of only $158.[4] (Doc. 4 at 1, 4–6, No. 3:12-bk-11686.) Although he had no secured creditors, his unsecured debts totaled $18,287. (*Id.*) As the Debtor later testified at a meeting of his creditors, initiated pursuant to § 341, and held on December 27, 2012, (*See* Docs. 6, 8, No. 3:12-bk-11686), he had seemingly paid Tower $2,034.81 within ninety days of the Petition Date, i.e. on or after August 19, 2012, (Doc. 1 at 2, No. 3:14-ap-01084). As such, on the Petition Date, Tower was both one of the Debtor's unsecured creditors and the recipient of payment for an antecedent debt on or before Sunday, August 19, 2012. (*See, e.g.*, *Id.* at 1–2.) The Appellee became the Trustee, charged with managing the Debtor's estate pursuant to § 701(a), on November 18, 2012.

---

[3] In this opinion, a specific case number will be included in any citation to a court document unless that document has been filed in the Present Action's docket, i.e. 15-cv-00578-JWD-EWD

[4] Interestingly, the Debtor's current monthly income was listed as $3,072 on another page of this fourth filing. (*Compare* Doc. 4 at 1, *with* Doc. 4 at 2, No. 3:12-bk-11686.)

(Doc. 6, No. 3:12-bk-11686.) The Debtor submitted Amended Schedules on February 13, 2013, (Doc. 14, No. 3:12-bk-11686), and received a discharge of all non-exempt debt, to the extent authorized by § 727(b), on February 28, 2013, (Doc. 15, No. 3:12-bk-11686).

On October 28, 2014, the Trustee filed the complaint ("Complaint"), beginning an adversary proceeding as defined in Federal Rule of Bankruptcy Procedure 7001,[5] from which the Present Action arises arises. (Doc. 39, No. 3:12-bk-11686; *see also, e.g.*, Doc. 1, No. 3:14-ap-01084.) In that pleading, the Trustee sought to void the garnishments collected by Tower as a preferential transfer pursuant to § 547(b) from August 19, 2012, through November 12, 2012, a period of ninety days prior to the Petition Date. (Doc. 1 at 2, No. 3:14-ap-01084; *see also, e.g.*, Doc. 3 at 5; Doc. 24 at 6–7, No. 3:14-ap-01084.) Initially, the Trustee sought the return of the sum—$2,034.81—provided by the Debtor during the creditors' December meeting and first requested via letters sent to Tower on March 19, 2013, and May 13, 2014. (Doc. 1 at 2, No. 3:14-ap-01084; *see also, e.g.*, Doc. 3 at 5; Doc. 24 at 6–7, No. 3:14-ap-01084.) Subsequently, Tower and the Appellee stipulated that the actual amount at issue was only $1,756.04. (Doc. 3 at 5; Doc. 10 at 5.) On April 22, 2015, Appellee filed a Motion for Summary Judgment, arguing no doubt could be raised about the application of § 547(b). (Doc. 18, No. 3:14-ap-01084.) Tower again objected, as it had "[m]ore than 90 days prior to the filing of . . . Jackson's . . . bankruptcy, . . . perfected a state court garnishment of his wages by serving the garnishment petition upon his employer." (Doc. 25 at 1, No. 3:14-ap-11686.) By its reckoning, this perfection—and therefore any "transfer"—took place on January 19, 2012, "the date the garnishment was served upon the employer." (*Id.* at 2.)

---

[5] In this opinion, any and all reference to "Rule" or "Rules" is to the Federal Rules of Bankruptcy Procedure unless otherwise noted.

On May 27, 2015, after a hearing, the Bankruptcy Court overruled Tower's objection and granted Appellee's dispositive motion. (Doc. 27, No. 3:14-ap-11686.) As permitted by § 158(a) of Title Twenty-Eight of the United States Code and in accordance with Rule 8002, Tower appealed the Bankruptcy Court's decision on August 28, 2015. (Docs. 1, 5, 10.) The Brief and Opposition arrived on September 9 and September 29, 2015, respectively. (Docs. 5, 10.)

**B.     Parties' Arguments**

Echoing assertions made below, the Appellant now contends that the "transfer" of property which the Bankruptcy Court allowed the Trustee to avoid pursuant to § 547(b) took place on January 19, 2012, "the date the garnishment package was served upon the [Debtor's] employer, which pre dates the November 176, 2012, bankruptcy filing by more than 90 days." (Doc. 3 at 6.) Appellant initially notes that "[a] transfer does include a garnishment lien under the broad definition found in" § 101(54) and thereupon insists that controlling state law demands its vindication, since "[u]nder Louisiana's statutory scheme the seizure of the non-exempt portion of the [D]ebtor's wages occurs on the date the employer is served with the garnishment documents and includes both accrued and future earnings." (*Id.*) The Appellant denies the relevance of three cases cited by the Trustee before the Bankruptcy Court—*Morehead v. State Farm Mut. Auto. Ins. Co. (In re Morehead)*, 249 F.3d 445 (6th Cir. 2001); *Chiasson v. First Tenn. Bank Nat'l Ass'n (In re Kaufman)*, 187 B.R. 167 (Bankr. E.D. La. 1995); and *Malone v. Fidelity Nat'l Bank (In re Dunn)*, 56 B.R. 275 (Bankr. M.D. La. 1985), (Doc. 3 at 7–11)—and urges this Court to adopt the reasoning of three cases already rejected by the Bankruptcy Court: *Askin Marine Co. v. Conner (In re Conner)*, 733 F.2d 1560 (11th Cir. 1984); *In re Coppie*, 728 F.2d 951 (7th Cir. 1984); and *Riddervold v. Saratoga Hosp. (In re Riddervold)*, 647 F.2d 342 (2d Cir. 1981), (Doc. 3 at 11–12).

In Tower's view, in wage garnishment cases, the date of perfection under state law is the minute of "transfer" under § 547(b).

The Opposition counters Appellant's every point. Thus, the Appellee defends its reliance on *In re Dunn and In re Kaufman* and quotes extensively from the Bankruptcy Court's oral decision "agree[ing] with the reasoning of those [and similarly inclined] courts." (Doc. 10 at 6–7.) As before, it too attacks *Conner*, *Coppie*, and *Riddervold* for "misappl[ying] . . . § 547(e)(1)(B) in arguing when a transfer occurs." (*Id.* at 8.) Instead, because "§ 547(e)(3) applies here[, . . . t]he [D]ebtor must earn the wages before they may be taken from him," (*Id.*), a position also endorsed by the Honorable James J. Brady of this district, *Schott v. First Pay Credit, Inc.*, No. 13-cv-257-JJB, 2013 U.S. Dist. LEXIS 113577, 2013 WL 4069531 (M.D. La. Aug. 12, 2013), (Doc. 10 at 9–10).

### III.   DISCUSSION

#### A.   Jurisdiction and Standard of Review

This Court's subject-matter jurisdiction is based upon 28 U.S.C. § 1334. 28 U.S.C. § 1334. The Bankruptcy Court's "factual findings are reviewed for clear error; its legal conclusions and mixed questions of fact and law, de novo." *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 402 (5th Cir. 2001). However, the clear error standard does not apply to findings of fact resulting from application of an incorrect legal standard. *See Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.)*, 926 F.2d 1458, 1464 (5th Cir. 1991) (relying on *Wilson v. Huffman (In re Missionary Baptist Found. of Am., Inc.)*, 712 F.2d 206, 209 (5th Cir. 1983)).

**B.     Relevant Law**

One section—§ 547(b)—controls this appeal. (Doc 3 at 4; Doc. 10 at 4.) Per this oft-litigated section, subject to certain inapposite exceptions, a trustee may recover the value of "an interest of the debtor in property" if he or she shows that interest was transferred (1) "to or for the benefit of a creditor," (2) for or on account of an antecedent debt owed by the debtor before such transfer was made," (3) while the "debtor was insolvent," (4) "on or within 90 days before the date of the filing of the petition" or "between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider," and (5) enabled "such creditor to receive more than such creditor would receive" if "the case were a case under [C]hapter 7," "the transfer had not been made," and "such creditor received payment of such debt to the extent provided by" the Code. 11 U.S.C. § 547(b); *Union Bank v. Wolas*, 502 U.S. 151, 154–55, 112 S. Ct. 527, 529–30, 116 L. Ed. 2d 514 (1991). The elements of § 547(b) are conjunctive, so that each must be present for a transfer to be avoided. *See, e.g.*, *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 706 F.2d 171, 172 (6th Cir. 1983); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 116–25 (2012). Here, however, the Parties' dispute and thus Appellant's entire appeal centers solely upon this section's fourth and final element: whether the garnishments of the Debtor's wages collected by Tower beginning on August 19, 2012, were transferred within ninety days of the Petition Date, (*See, e.g.*, Doc. 3 at 4; Doc. 10 at 4).

For purposes of applying this element, this Court looks to the relevant denotations stated in the Code. Section 101 defines a transfer as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or departing with . . . property . . . or an interest in property." 11 U.S.C. § 101(54)(D); *see also, e.g.*, *In re Tonyan Constr. Co.*, 28 B.R.

714, 728 (Bankr. N.D. Ill. 1983) (quoting earlier formulation, then lodged in § 101(40)); *Rocky Mountain Sys. Inc. v. Mann Inc. (In re Rocky Mountain Ethanol Sys., Inc.)*, 21 B.R. 707, 709 (Bankr. D.N.M. 1981) (same). This definition, as more than one court has noted, is "broad and comprehensive." Dic*kson v. Countrywide Home Loans (In re Dickson)*, 655 F.3d 585, 593 (6th Cir. 2011) (citing *Hoffman v. Cent. Pa. Nat'l Bank (In re Hoffman)*, 96 B.R. 46, 47 (Bankr. W.D. Pa. 1988)). As this section has been understood, with courts placing much emphasis upon the Code's legislative history, H.R. REP. NO. 95-595, at 362 (1977), an involuntary transfer is said to occur "when the property is transferred by operation of law, such as by means of . . . garnishment." *Berman v. Forti (In re Berman)*, 232 B.R. 653, 656 (D. Md. 1999) (citing *Davis v. Suderov (In re Davis)*, 169 B.R. 285, 295–96 (E.D.N.Y. 1994)); *accord, e.g.*, *Funches v. Household Fin. Consumer Disc. Co. (In re Funches)*, 381 B.R. 471, 493 (Bankr. E.D. Pa. 2008) (quoting *In re Berman*, 232 B.R. at 656); *Maus v. Joint Twp. Dist. Mem'l Hosp. (In re Maus)*, 282 B.R. 836, 838 (Bankr. N.D. Ohio 2002) (stating that "it is clear that the nature of the garnishment action undertaken against the Debtor qualifies, for purposes of § 522(g), as an involuntary transfer of property"). Finally, per § 547(e)(3), no "transfer," as defined in § 101(54)(D) and for purposes of § 547, takes place "until the debtor has acquired rights in the property transferred." 11 U.S.C. § 547(e)(3); *Chase Manhattan Mortg. Corp. v. Shapiro (In re Lee)*, 530 F.3d 458, 464 (6th Cir. 2007) (citing § 547(e)(3)); *Sloan v. Zions First Nat'l Bank, N.A. (In re Castletons, Inc.)*, 990 F.2d 551, 555 (10th Cir. 1993) (same). Thus, while a transfer is perfected only "when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee," 11 U.S.C. § 547(e)(1)(B), and while "[a] more precise definition of 'perfection' is left to state law," *Battery One-Stop Ltd. v. Atari Corp. (In re Battery One-Stop*

*Ltd.)*, 36 F.3d 493, 495 (6th Cir. 1994), § 547(e)(3) encodes a caveat to this general rule. *In re Morehead*, 249 F.3d at 447–48.

From these sections and in this jurisprudence, a guiding principle can be found: though state law delimits the concepts of property and interests of property central to the Code's administration, federal bankruptcy law alone defines what constitutes a transfer and when it is complete. *Barnhill v. Johnson*, 503 U.S. 393, 397, 112 S. Ct. 1386, 1389, 118 L. Ed. 2d 39 (1992); *see also, e.g.*, *Youngblut v. Pepmeyer (In re Pepmeyer)*, 275 B.R. 539, 543 (Bankr. N.D. Iowa 2002) ("The concept of transfer is controlled by [f]ederal law."); *Official Unsecured Creditors' Comm. of Belknap, Inc. v. Shaler Corp. (In re Belknap, Inc.)*, 909 F.2d 879, 882 (6th Cir. 1990) ("[T]he supremacy of state law is confined to determining what constitutes perfection of a transfer. The question of whether a transfer is preferential and avoidable by the trustee is governed by § 547 of the Code." (quoting 4 COLLIER ON BANKRUPTCY ¶ 547.16 (15th ed. 1990))). And, in accordance with the Constitution's Supremacy Clause, U.S. CONST. art. VI, cl. 2, "where the meaning of the . . . Code's text is itself clear, . . . its operation is unimpeded by contrary state law or prior practice," *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546, 114 S. Ct. 1757, 1765, 128 L. Ed. 2d 556 (1994). Hence, in determining when a transfer occurs, the Code controls, especially after *Barnhill*. *In re Morehead*, 249 F.3d at 447–48.

**C.     Application**

Applying the foregoing precedent, and having reviewed the Bankruptcy Court's legal conclusions de novo, this Court concurs with its analysis and reaches the same decision: even though the Order granted Tower a perfected interest on January 19, 2012, (Doc. 3 at 6), a "transfer" of property only occurred only once the Debtor earned his garnished wages, and

because that transfer took place ninety days or less before the Petition Date, § 547's temporal prong was fully met. True, under Louisiana law, a garnishment seizure takes effect "upon service on the garnishee of the petition, citation, interrogatories, and a notice of seizure." LA. CODE CIV. PROC. art. 2411. True, "[i]n a garnishment of wages the seizure includes both accrued and future earnings." *Assocs. Fin. Servs., Inc. v. McClendon*, 367 So. 2d 91, 93 (La. Ct. App. 1979). And true, "the seizing creditor, by the mere act of seizure, acquires a privilege on the property seized which entitles him to a preference over ordinary creditors." *Id.* Yet, in placing so much weight upon this law, Appellant misses the plain import of the Code's express text.

Quite simply, regardless of when *perfection* occurs under state law,[6] *see, e.g.*, *In re Jones*, 47 B.R. 786, 788 (Bankr. E.D. Va. 1985), the Code itself defines when the *transfer* relevant to § 547 takes place: once "the debtor has acquired rights in the property transferred," 11 U.S.C. § 547(e)(3), a definition that must here control, *BFP*, 511 U.S. at 546. Factually and logically, an employee has no right to salary until it is earned, and he or she thus does not "acquire[] rights" within the meaning of this subsection until that precise moment in time. *See, e.g.*, *In re White*, 258 B.R. 129, 134 (Bankr. D.N.J. 2001); *In re Mays*, 256 B.R. 555, 560 (Bankr. D.N.J. 2000); *In re Holdway*, 83 B.R. 510, 514 (Bankr. E.D. Tenn. 1988); *Perry v. Gen. Motors Acceptance Corp. (In re Perry)*, 48 B.R. 591, 593–94 (Bankr. M.D. Tenn. 1985); *Tabita v. IRS (In re Tabita)*, 38 B.R. 511, 512 (Bankr. E.D. Pa. 1984). Just as plausibly, because an employer can only transfer that in which he, she, or it has some right, a transfer of future wages in garnishment cases cannot "take place at the time the garnishment is ordered." *Biase v. Congress Fin. Corp. (In re Tops Appliance City, Inc.)*, 372 F.3d 510, 515 (3d Cir. 2004); *see also, e.g.*, *Braunstein v. Karger (In*

---

[6] Indeed, the very fact that the Appellant fails to distinguish between distinct legal acts—perfection and transfer—severely weakness its argument's cogency.

re Melon Produce)*, 976 F.2d 71, 76 (1st Cir. 1992) ("[F]*or purposes of determining bankruptcy preferences*, the transfer of the perfected security interest to Karger did not take place before Melon acquired the 'property' in question." (emphasis in original)). For these two reasons, as the *Schott* opinion concludes, *Schott*, 2013 U.S. Dist. LEXIS 113577, at *7–8, 2013 WL 4069531, at *3, the vast majority of cases hold that wages received by a creditor, like Tower, during the preference period pursuant to an older order of garnishment are "transfers" within the preference period under § 547(b) and pursuant to § 547(e)(3). *See, e.g.*, *Morehead*, 249 F.3d at 448; *Chavez v. Mercury Fin. (In re Chavez)*, 257 B.R. 341, 344 (Bankr. D.N.M. 2001); *Wade v. Midwest Acceptance Corp. (In re Wade)*, 219 B.R. 815, 821 (8th Cir. B.A.P. 1998): *Fluharty v. General Motors Acceptance Corp. (In re Polce)*, 168 B.R. 580, 586 (Bankr. N.D. W. Va. 1994); *Taylor v. Mississippi Learning Inst. (In re Taylor)*, 151 B.R. 772, 779 (Bankr. N.D. Miss. 1993); *Larson v. Laing (In re Castleton)*, 84 B.R. 743, 744 (Bankr. D. Colo. 1988); *In re Holdway*, 93 B.R. at 514; *In re Krumpe*, 60 B.R. 575, 578 (Bankr. D. Md. 1986); *Button v. Noe (In re Button)*, 29 B.R. 118 (Bankr. E.D. Tenn. 1983). With the rare exceptions discussed below, *see infra* 12–13, a near consensus has been struck.

This result makes perfect sense, for to decide differently, as more than one of the courts so convinced has observed, would impermissibly accord a state law governing perfection preeminence over the Code's unequivocal mandate. *In re Johnson*, 239 B.R. 416, 418 (Bankr. M.D. Ala. 1999) ("No fiction of state garnishment law should be erected to defeat the purpose of the [f]ederal statute."). As neither the Constitution's Supremacy Clause nor the Supreme Court's modern bankruptcy jurisprudence can be fairly read to authorize such a result, *see supra* Part III.B, this Court declines to do so and joins this substantial majority. Consequently, like the Bankruptcy Court, this Court holds that the value of the garnishments of the Debtor's wages

earned during the ninety-day period and collected by Tower prior to the Petition Date must be classified as voidable preferences under § 547(b). Due to this classification, required as a matter of federal statutory law, the Trustee was entitled to recover every penny, precisely as the Bankruptcy Court ruled.

Although Appellant points to three cases which support its position, (Doc. 3 at 10–11), not one withstands diligent scrutiny. *Riddervold* did hold that no transfer occurred during the preference period because a garnishment order's execution created a continuing lien which acted as a novation of the debtor's rights in his own wages. 647 F.2d at 346. But it also wholly ignored § 547(e)(3)'s governing definition of "transfer." *E.g.*, *Schott*, 2013 U.S. Dist. LEXIS 113577, at *8, 2013 WL 4069531, at *3; *In re Tabita*, 38 B.R. at 513. By any measure, such a result defies the edict set out in *BFP* and *Barnhill* and implicit in the Supremacy Clause. *See supra* Part III.B. Significantly, the same omission lies at the heart of *Conner* and must prove equally fatal. *E.g.*, *In re White*, 258 B.R. at 134; *Schott*, 2013 U.S. Dist. LEXIS 113577, at *8, 2013 WL 4069531, at *3; *Freedom Grp. v. Lapham-Hickey Steel Corp. (In re Freedom Grp.)*, 50 F.3d 408, 412 (7th Cir. 1995). Unlike the preceding cases, *Coppie* did discuss § 547(e)(3), but the court there found this subsection inapplicable "because after a garnishment order providing for a continuing lien is entered in Indiana, a debtor will never acquire rights in the portion of his or her wages to be garnished in the future." 728 F.2d at 952. This holding, unfortunately, cannot be squared with §547(e)(3)'s plain terms, as it expressly requires the acquisition of a right in a propriety before a "transfer" can even take place. 11 U.S.C. § 547(e)(3); *see also Schott*, 2013 U.S. Dist. LEXIS 113577, at *8, 2013 WL 4069531, at *3. Perhaps most significantly, these three cases predated *Barnhill*, in which the Supreme Court held that whether such a transfer takes place is a matter of federal, not state, law. *Barnhill*, 503 U.S. at 397; *see also supra* Part III.B. In fact, after

mentioning *Conner*, the Seventh Circuit declared that pre-*Barnhill* decisions in the vein of *Coppie* and *Riddervold* stressed by the Appellant had "not survive[d]." *In re Freedom Grp.*, 50 F.3d at 412. Accordingly, despite Appellant's urging, (Doc. 3 at 11–12), this Court declines to follow them.

### IV.   CONCLUSION

Interpreted naturally, § 547 *in toto* leaves no doubt about the fact that the garnishments collected by Tower beginning on August 19, 2012, occurred ninety-days prior to the Petition Date. In light of § 547(e)(3), the Order's perfection cannot be deemed dispositive, for until the wages were earned, the Debtor had acquired no right to collect a penny or a dollar. Accordingly, the Bankruptcy Court's ruling and subsequent judgment, holding that the garnishment payments made from August 19, 2012, through November 17, 2012, are preferential payments pursuant to § 547(b) and are avoidable because the transfers took place within ninety days of the Debtor's bankruptcy filing, is hereby AFFIRMED.

Signed in Baton Rouge, Louisiana, on <u>March 24, 2016</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**